

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **MARCUS MARTIN,** | ) | **Docket No. 2022-07-0684** |
| **Employee,** | ) | |
| **v.** | ) | |
| **CECO DOOR PRODUCTS,** | ) | **State File No. 36535-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **TRAVELERS INDEMNITY CO.,** | ) | **Judge Amber E. Luttrell** |
| **Carrier.** | ) | |

## COMPENSATION ORDER

The Court held a compensation hearing on Mr. Martin's request for workers' compensation benefits for hearing loss. At issue is the admissibility of Dr. Karl Studtmann's thirty-three percent impairment rating and the extent of Mr. Martin's permanent partial disability. For the reasons below, the Court excludes the thirty-three percent rating and holds that Mr. Martin is entitled to two percent permanent partial disability.

### Claim History

Mr. Martin, a forty-two-year employee of Ceco, alleged hearing loss in both ears. He described Ceco as a "very loud environment" and stated he first noticed difficulty understanding people four to five years ago. Ceco tested his hearing in 2021 and told him he had hearing loss. Ceco offered Mr. Martin a panel of physicians, from which he selected Dr. Mitchell Schwaber.

Dr. Schwaber testified that Mr. Martin gave a history of difficulty understanding conversational speech, particularly with background noise. Mr. Martin told him it seemed to be worsening. He also reported minor ringing in his ears. Dr. Schwaber ordered an audiogram and diagnosed noise-induced bilateral sensorineural hearing loss. He recommended Mr. Martin wear hearing protection, undergo exams every two years, and obtain/replace his hearing aids every four years. Dr. Schwaber placed him at maximum medical improvement on November 8, 2021, and assigned a two-percent permanent

1

impairment based on the sixth edition of the AMA Guides. To calculate the impairment under the Guides, he averaged Mr. Martin's audiogram results at the 500, 1000, 2000, and 3000 frequency levels and inserted the figure into a formula that yielded a binaural impairment, which he converted to a two-percent impairment rating.

Dr. Schwaber testified that his rating is consistent with the directives of the Guides. The Guides method is "relied on in the Tennessee medical community . . . and in medical communities outside of Tennessee." He further stated that, based on his research in the ENT medical field, the Guides method is "used and relied on by the majority of other physicians to assess permanent impairment for hearing loss."

Mr. Martin saw Dr. Karl Studtmann for an independent medical evaluation. Dr. Studtmann obtained an audiogram and stated the results were "very similar" to the one ordered by Dr. Schwaber. The tests showed a "down-sloping high-frequency sensorineural or nerve type hearing loss" suggestive of noise-induced hearing loss. Dr. Studtmann testified that under the Guides, Mr. Martin's impairment rating was zero.

Dr. Studtmann disagreed with the Guides methodology for assigning hearing impairment, since the sixth edition only goes through 3000 hertz and the majority of Mr. Martin's hearing loss was above that level. He stated that "current research suggests a more accurate way of assessing impairment from high-frequency sensorineural hearing loss is to take the most severe hearing level and use that as a flat line hearing loss." Thus, he used this method to assign a thirty-three percent impairment.

He explained that he took Mr. Martin's audiogram results for the lower levels and altered them to Mr. Martin's most severe hearing loss level on the audiogram to create a flat line. He acknowledged that the actual results for the lower-level frequencies suggest a lesser degree of hearing loss than his method of "bringing them up to the most severe level."

Dr. Studtmann testified that his method is supported by a peer-reviewed article authored by two audiologists, "Hornsby and Ricketts," who discussed functional impairment caused by high-frequency loss. He also generally referenced nineteen published studies that he contended support his method.

He stated that he has not published any articles regarding his method for assigning impairment in workers' compensation cases and does not know if anyone has published this method. He did not know if his method has been peer-reviewed and could not name another medical group or association that uses his method to assign hearing loss impairment. He further testified that the American Academy of Otolaryngology has a formula that uses frequencies that do not exceed the 3000-hertz level for measuring impairment, which is similar to the Guides method.

Dr. Schwaber disagreed with Dr. Studtmann's methodology for several reasons. He stated that Dr. Studtmann's rating method is "not used or accepted by the medical community in any way"; his method has not been tested or peer reviewed for validity as a method for determining impairment; and, his method "ignores the fact that there is significant hearing that occurs in the lower frequencies between 1- and 2000 hertz for speech."

Dr. Schwaber also testified that Dr. Studtmann "assigns an altered frequency response or value for those frequencies, which may have been functioning pretty normally to come up with his formulas, which is not done anywhere else." In other words, he said that Dr. Studtmann "manipulates those frequency results to get his impairment rating." This "seriously overinflates the amount of impairment."

Dr. Schwaber cited a recent Harvard article, which shows the majority of human conversational speech is between the 1000 to 2000 level. Mr. Martin's testing from the 1000- to 2000-hertz level was essentially normal. He has moderate to severe loss in the 3000 level. Lastly, Dr. Schwaber pointed out that, under the Guides, the maximum impairment rating for a completely deaf person is thirty-five percent. Dr. Schwaber stated that he did not find Mr. Martin to be near completely deaf as his thirty-three percent rating suggests.

As to the articles Dr. Studtmann relied on, Dr. Schwaber testified that the Hornsby and Ricketts article addressed how hearing aids should be programmed and did not discuss assessing permanent impairment for hearing loss. The article was not peer-reviewed for any particular methodology for assessing hearing loss impairment. Dr. Schwaber testified that no medical organization has adopted any methodology in the Hornsby and Ricketts article for rating hearing loss impairment. He also read the other nineteen articles and stated they do not support Dr. Studtmann's method or suggest that it has been accepted in the medical community.

Dr. Schwaber agreed that Mr. Martin's greatest hearing loss was at the 3000 range and higher frequencies, which means he has difficulty hearing certain sounds or understanding some noises or sounds. He also acknowledged that the AMA Guides underestimates a patient's disability, but it covered most of Mr. Martin's speech frequencies. However, he maintained that Dr. Studtmann's method "seriously overrates" the hearing loss to arrive at an impairment rating.

Mr. Martin testified he still works for Ceco as a lead man and is able to direct other employees. He has difficulty understanding what people are saying to him. Sometimes he cannot understand coworkers over the radio and asks them to repeat themselves. Outside

of work, he struggles with hearing his granddaughters and turns up the television volume. He has not seen a doctor for hearing aids.[1]

## Findings of Fact and Conclusions of Law

Mr. Martin must prove all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2023).

*Motion to Exclude*

At the hearing, the parties argued Ceco's motion to exclude Dr. Studtmann's thirty-three percent rating under Tennessee Code Annotated section 50-6-204(k)(2)(C). It states,

> No impairment rating . . . shall be . . . admissible into evidence at the trial of a workers' compensation claim unless the impairment rating is *based on the applicable edition of the AMA Guides or, in cases not covered by the AMA Guides, an impairment rating by any* **appropriate method used and accepted by the medical community**.

(Emphasis added).

Based on the medical testimony, Ceco argued that Dr. Studtmann's thirty-three percent rating is inadmissible because the Guides includes a method of determining impairment for hearing loss up to 3000 hertz, which Dr. Schwaber testified covers most speech frequencies. For losses in higher frequencies not covered by the Guides, Ceco contended that the proof showed Dr. Studtmann's method is not appropriate, or accepted or used by the medical community. The Court agrees.

Dr. Schwaber testified that Mr. Martin's greatest hearing loss was above 3000 hertz and acknowledged that the Guides method slightly underestimates the impairment. However, he cited a recent Harvard article that showed the 2000 level is very important in conversational speech and that most speech frequencies are between the 1000- and 4000-hertz level, which the Guides covers.

As for Dr. Studtmann's method, Dr. Schwaber persuasively testified that it is inappropriate, in part, because it "seriously overestimates the impairment." Dr. Studtmann took Mr. Martin's audiogram results at the lower levels and artificially altered the numbers to equal his worst results at the 8000 level to create the "flat line." In other words, Mr. Martin's actual audiogram levels in the lower frequencies, where most conversational speech occurs, were not considered in rating his hearing loss.

---

[1] As to the other lay witnesses, Mrs. Martin testified consistently with Mr. Martin regarding his symptoms. She added that he was unable to hear a neighbor speaking directly to him at a community picnic. Scott Martin, Ceco's director of environmental health and safety, testified that Mr. Martin is able to perform his job without any accommodations and has reported no problems.

The totality of the evidence does not show that Dr. Studtmann's method is accepted or used by the medical community. Dr. Studtmann primarily referenced the Hornsby and Ricketts article and nineteen others, which he contended support the idea that higher frequency loss affects understanding of speech.

Dr. Schwaber reviewed all of these articles and testified unequivocally that they do not support his method. In fact, he and Dr. Studtmann agreed that the Hornsby and Ricketts article did not address assigning impairment ratings for hearing loss. As for the other articles, Dr. Schwaber stated they do not mention Dr. Studtmann's rating method or say that it has been used or accepted in the medical community.

Further, Dr. Studtmann acknowledged that he has not published his rating method, it has not been tested or peer reviewed, and he knows of no other physician or association that uses it.[2]

The Court finds that Dr. Studtmann's flat-line rating method is neither appropriate nor accepted or used by the medical community. Therefore, his thirty-three percent rating is not admissible.

*Permanent partial disability*

While perhaps imperfect, the Guides offers a method for assigning impairment for hearing loss for most conversational speech. Both Drs. Schwaber and Studtmann assigned ratings under the Guides. Dr. Schwaber assigned a two percent rating; Dr. Studtmann assessed zero percent. As the authorized treating physician, Dr. Schwaber's rating is rebuttably presumed correct. Tenn. Code Ann. § 50-6-204(k)(7).

Based on a two percent rating, Mr. Martin is entitled to an original award of nine weeks at the compensation rate of $994.00, or $8,946.00. Mr. Martin has returned to work for Ceco and is not entitled to any increased benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1.   Ceco Door shall pay Mr. Martin a lump-sum award of permanent partial disability benefits equal to two percent permanent partial disability for nine weeks, or $8,946.00.

2.   Mr. Martin's attorney is entitled to a twenty percent fee of the award under Tennessee Code Annotated section 50-6-226(a)(1). Mr. Barnes may also move the Court for an award of discretionary costs unless the parties reach an agreement on

---

[2] While this issue can be decided on the factual proof alone, notably, recent caselaw casts doubt on the method's use and acceptance in the medical community. *See Garner v. Goodyear Tire & Rubber Co.,* No. W2020-00280-SC-R3-WC, 2021 Tenn. LEXIS 63, at *19 (Tenn. Workers' Comp. Panel Mar. 19, 2021) (The Tennessee Supreme Court has not "formally and universally adopted the flat line method for all high frequency hearing loss cases.").

the issue.

3.  Ceco Door shall pay future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A).

4.  The $150.00 filing fee is taxed to Ceco Door, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (February 2022) within five business days, and for which execution might issue if necessary.

5.  Ceco Door shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within ten business days of this order becoming final.

6.  Unless appealed, this order shall become final thirty days after issuance.

**ENTERED November 30, 2023.**

_Amber E. Luttrell_

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits
1. Dr. Schwaber's deposition
2. Dr. Studtmann's deposition
3. Panel of Physicians

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice and additional issues
3. Request for Scheduling Hearing
4. Scheduling Order
5. Transfer Order
6. Employer's Motion to Exclude Evidence of Improper Rating
7. Employee's Response to Employer's Motion
8. Employer's Reply to Employee's Response
9. Pre-Compensation Hearing Statement
10. Employee's Witness and Exhibit List
11. Employer's Pre-Trial Brief
12. Employer's Witness list
13. Employer's Exhibit list
14. Post-Discovery Dispute Certification Notice

15. Caselaw cited by parties

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on November 30, 2023.

| Name | Email | Service sent to: |
|---|---|---|
| Spencer Barnes, Employee's Attorney | X | spence@morrisonandbarnes.com kaylie@morrisonandbarnes.com |
| J.V. Thompson, Employer's Attorney | X | jthompson@raineykizer.com ahollingsworth@raineykizer.com |

_____

**Penny Shrum, Court Clerk**
Court of Workers' Compensation Claims



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*